BOSWELL

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Cr. No.: 19-20080 JPM |
| ) | |
| vs. ) | 21 U.S.C. § 841 |
| ) | |
| MICHAEL HELLMAN, M.D., ) | <u>FILED UNDERSEAL</u> |
| ) | |
| Defendant. ) | |

# INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this indictment:

1. Defendant **MICHAEL HELLMAN** was a doctor who was licensed by the State of Tennessee Department of Health, Board of Examiners as a medical doctor under license number 9851. **HELLMAN** maintained a Drug Enforcement Administration Registration ("DEA") Number, DEA License Number AH7482689. **HELLMAN** issued prescriptions for controlled substances, including the Schedule II controlled substance Oxycodone (Percocet), the Schedule III controlled substance of Buprenorphine with Naloxone (Suboxone), and the Schedule V controlled substance Promethazine with Codeine, at his office located at 336 Poplar View Parkway Suite #2, Collierville, Tennessee, outside the usual scope of professional practice and without a legitimate medical purpose.

### CONTROLLED SUBSTANCE STATUTES AND CONTROLLING REGULATIONS

2. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited

exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

3. Medical practitioners, such as physicians and nurse practitioners, who were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine, were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were registered with the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03. Upon application by the practitioner, the DEA assigned a unique registration number to each qualifying medical practitioner including physicians and nurse practitioners.

4. The CSA and its implementing regulations set forth which drugs and other substances were defined by law as "controlled substances," and assigned those controlled substances to one of five Schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

5. A controlled substance assigned to Schedule II meant that the drug had a high potential for abuse which may lead to severe psychological or physical dependence. Percocet, a brand of Oxycodone, was classified as a Schedule II drug.

6. A controlled substance assigned to Schedule III meant that the drug had moderate to low potential for physical and psychological dependence. A Schedule III drug's abuse potential is less than Schedule I and Schedule II drugs but more than Schedule IV. Buprenorphine (an ingredient in Suboxone), was reclassified from a Schedule V drug to a Schedule III drug in 2002.

7. A controlled substance assigned to Schedule V meant that the drug or other substance had a lower potential for abuse than Schedule IV and consists of preparations containing limited quantities of certain narcotics. Schedule V drugs are generally used for antidiarrheal, antitussive, and analgesic purposes. Promethazine with Codeine was classified as a Schedule V controlled substance.

8. Chapter 21 of the Code of Federal Regulations, Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."

9. Chapter 21 of the Code of Federal Regulations, Section 1306.04, further directed that "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

## COUNT 1
### Unlawfully Distributing and Dispensing Controlled Substances
### (21 U.S.C. § 841)

10. Paragraphs 1 through 9 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

11. On February 7, 2019, in the Western District of Tennessee, Defendant **HELLMAN**, did intentionally and knowingly distribute and dispense, not for a legitimate medical purpose and outside the scope of professional practice, a Schedule II controlled substance, Oxycodone (Percocet), in violation of Title 21, United States Code, Section

841(a), (b)(1)(C).

## COUNT 2
### Unlawfully Distributing and Dispensing Controlled Substances
### (21 U.S.C. § 841)

12.   Paragraphs 1 through 9 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

13.   On February 20, 2019, in the Western District of Tennessee, Defendant **HELLMAN**, did intentionally and knowingly distribute and dispense, not for a legitimate medical purpose and outside the scope of professional practice, a Schedule V controlled substance, Promethazine with Codeine, in violation of Title 21, United States Code, Section 841(a), (b)(3).

## COUNT 3
### Unlawfully Distributing and Dispensing Controlled Substances
### (21 U.S.C. § 841)

14.   Paragraphs 1 through 9 of this Indictment are re-alleged and are incorporated by reference as though fully set forth herein.

15.   On March 7, 2019, in the Western District of Tennessee, Defendant **HELLMAN**, did intentionally and knowingly distribute and dispense, not for a legitimate medical purpose and outside the scope of professional practice, a Schedule III controlled substance, Buprenorphine (an ingredient in Suboxone), in violation of Title 21, United States Code, Section 841(a), (b)(1)(E).

## NOTICE OF CRIMINAL FORFEITURE
### (21 U.S.C. § 853)

16.   The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging

forfeitures pursuant to Title 21, United States Code, Section 853.

17. Pursuant to Title 21, United States Code, Section 853, the United States gives notice to defendant **HELLMAN** that upon conviction of an offense in violation of Title 21, United States Code, Section 841, the following property shall be subject to forfeiture:

a. All property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offense; and

b. All property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offense.

18. Defendant **HELLMAN** is notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture.

19. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture.

A TRUE BILL:

_____
**F O R E P E R S O N**

**DATED:** _____

_____
**D. MICHAEL DUNAVANT**
**UNITED STATES ATTORNEY**

_____
**JOSEPH BEEMSTERBOER**
**CHIEF, FRAUD SECTION, CRIMINAL DIVISION**